The Trustees of Schools, plaintiffs in error, *vs.* John S. Wright *et al.*, defendants in error.

*Error to La Salle.*

An implied lien on land, for the payment of the purchase money, must, as against third persons, be enforced by the vendor, within a reasonable time, after his right to do so attaches.

In 1835, the school commissioner sold lands to A, and received his notes, with B and C as sureties, for the payment of the price, and gave him a certificate of purchase, but failed to take a mortgage on the premises, as required by statute. In 1836, A sold the land to D; and, in 1837, D sold the same to E, F and G. Patents were issued to A, in 1838. In 1845, the trustees of schools filed a bill in chancery, to subject the land to sale for the payment of the original purchase money, which became due in 1838. Held, that the application came too late.

This cause was heard and decided by Caton, Judge, at the April term, 1847. The facts of the case will appear in the opinion of the Court.

A. Hoes and H. G. Cotton, for the plaintiffs in error.

J. H. Collins, for the defendants in error.

Opinion by Treat, C. J.:

This was a bill in chancery, filed in October, 1845, by the trustees of schools in township thirty-three north, of range five east, in La Salle county, against John T. Temple, William Saltonstall, Royal Stewart, Grant Goodrich, John S. Wright, Amasa Wright, Hosea Webster and Frederick Deming. The bill alleged, that on the first of May, 1835, the school commissioner of La Salle county, in pursuance of the petition of the inhabitants of the township, sold section sixteen at public auction, on a credit of one, two and three years; and that Temple became the purchaser of five hundred and twenty acres thereof, for the aggregate sum of $3,104 40; that, on the same day, Temple made to the commissioner three promissory notes, with Stewart and Goodrich as sureties, for $1,034 80 each, payable, respectively, in one, two and three years from date; and the commissioner executed and delivered to Temple a certificate of purchase, in these words: " County of La Salle, 1st of May, 1835. This is to certify, that Dr. J. T. Temple did, on the 1st of May, 1835, purchase at public auction, lots one, two, three, four, six, seven, eight, ten, eleven and twelve, being part of section six-

teen, in township thirty-three north, of range five east of the third principal meridian, and containing five hundred and twenty acres, for the sum of $3,104 40, for which said Temple has given his obligations, in compliance with the advertisement. David Letts, commissioner of school lands for La Salle county." That, on the 9th of June, 1835, the commissioner reported an account of the sales to the County Commissioners' Court, in which he stated generally, that he had received the notes of the purchasers, with personal security; that no mortgage was ever executed by Temple, to secure the payment of the purchase money; that the notes were handed over to the treasurer of the township, and are still in his hands, as the property of the township, the greater portion thereof remaining unpaid; that, in May, 1838, patents issued to Temple for the lands, which are in the possession of the treasurer of the township; that there are no improvements on the land, nor has the same been occupied since the sale; that, in September, 1840, Temple conveyed lots one, two, three, six, seven and eight, to John S. Wright, who, prior to the execution of the deed, was fully informed that the purchase money was unpaid; that, in October, 1837, said Wright was largely indebted to Amasa Wright, Webster and Deming, and, for the purpose of securing them, conveyed to each of them one undivided third part of said lots; that Temple was afterwards declared a bankrupt, and discharged from the payment of his debts; that Saltonstall was the assignee in bankruptcy, and that Stewart and Goodrich are wholly insolvent; that the treasurer of the township has often demanded payment of the purchase money of John S. Wright and his grantees. The bill prays that the lots may be charged with the payment of the purchase money, and sold for the satisfaction thereof.

John S. Wright, in his answer, admits the sale of the land to Temple, the execution of the certificate and notes, the making of the report, and the issuing of the patents, as charged in the bill; admits that Temple conveyed the lots to him, in 1840, but insists that he purchased the same in good faith, and paid therefor in full, in May, 1836, without any knowledge, notice or information that the purchase money was unpaid; denies that he had any knowledge that the purchase money was unpaid, until some time after he had bought and paid for the lots, when he heard that the notes were unpaid, but insists that the makers

were then responsible, and that the notes might have been col-
lected by proper diligence; admits that, in the winter of 1838
'39, the treasurer of the township called on him and demanded
payment of some portion of the notes; admits the conveyance
of the lots to his co-defendants, but denies that the same was
made to secure the payment of a preexisting indebtedness; alle=
ges that the sale to them was absolute, and in consideration of
$1,350, fully paid by them to him, at and before the sale.

Amasa Wright, Webster and Deming, in a joint answer, admit
the sale to Temple, the execution of the certificate and notes,
the making of the report, the issuing of the patents, the convey-
ance to John S. Wright, and the conveyance by him to them, as
charged in the bill; they deny that the lots were conveyed to
them to secure the payment of a preexisting indebtedness, but
insist that the sale was absolute, and in consideration of $1,350,
fully paid by them before and at the time of the conveyance;
they deny that at the time of the conveyance to them, they had
any knowledge, notice or information that the purchase money
was unpaid, and insist that they were *bona fide* purchasers, for
a full consideration.

Replications were filed to the answers. The bill was taken
for confessed against Temple, Saltonstall, Stewart and Goodrich.
No proof was taken by any of the parties. On the hearing, the
Court decreed that Stewart and Goodrich pay to the complain-
ants $3,650 29—the amount due on the notes; that Saltonstall
pay the same *pro rata* out of the assets of Temple in his hands;
that lots four, ten, eleven and twelve, be sold, to satisfy the
amount found due; and that so much of the bill as claims relief
against the remaining lots be dismissed. To reverse this part
of the decree, the complainants prosecuted a writ of error.

The issuing of the patents vested the legal title to the lots in
Temple. The state thereby parted with the title—the delivery
of the patents to the school commissioner, from whom the treas-
urer of the township must have received them, being a valid de-
livery to the purchaser. The People *vs.* The Auditor, 2 Scam-
mon, 567. The subsequent conveyance by Temple to John S.
Wright inured to the benefit of the grantees of the latter. Rev.
Laws of 1833, page 131, sec. 7.

If this was an ordinary case of the sale of land, there would
not be the slightest pretence for insisting that the complainants

had any lien on the lots, for the payment of the purchase money. The payment of the price was secured by the joint notes of the purchaser and two other persons. The principle is now too well established to require discussion, that where the vendor parts with the legal estate and takes security, other than the personal liability of the vendee, for the payment of the purchase money, he thereby waives his lien on the land. The taking of the obligation of the purchaser, secured by a third person, amounts to an extinguishment of any implied lien on the land. In such case, the seller is considered as relying on the security taken, and not on the land, for the payment of the consideration. See Conover *vs.* Warren, 1 Gilman, 498, and the cases there cited. But, it is insisted, that this case is not within the operation of this principle. It is contended, inasmuch as the school commissioner was required by statute to take a mortgage on the premises, to secure the payment of the purchase money, that he could not, by omitting to perform that duty, waive the lien; and, consequently, that the purchaser and his grantees, being chargeable with a knowledge of the law, could not acquire an indefeasible estate in the land, until the consideration should be fully paid. The act of January 12th, 1833, under which the sale was made, provided, that whenever the inhabitants of a township should represent to the school commissioner that their interest would be promoted by selling the school section on a credit, it should " be the duty of the commissioner to sell said lands, on a credit of one, two and three years, the purchaser giving a mortgage on the lands, and good personal security, for the payment of the purchase money."

Whether it was in the power of the school commissioner to dispense with this requisition of the statute, so as to transfer the land to the purchaser divested of any lien for the payment of the purchase money, is a question not now necessary to be determined, as we are inclined to take another view of the case, which, if correct, fully disposes of it. Assuming that the complainants once had the right to resort directly to the land, for the payment of the purchase money, we are of the opinion that the application to enforce the right comes too late. The whole of the purchase money became due in May, 1838, and no steps were taken to coerce its payment, by proceedings to subject the land to sale, until October, 1845—more than seven years inter-

vening between the accruing of the right, and the resort to any remedy for the purpose of enforcing it. These secret liens on real estate, because generally in point of fact—however it may be in legal contemplation—unknown to the parties to be affected by them, are often productive of much injustice, and ought not to be encouraged. Courts should not lend their aid to enforce them, as against third persons, except in clear cases, and where creditors have not been guilty of any laches in asserting them. If a vendor fails to institute proceedings to enforce an implied lien, within a reasonable time after his right to do so attaches, the presumption should be indulged, that he relied exclusively on his other remedies to recover the purchase money, and therefore abandoned or waived his lien on the land. After such a lapse of time, as in this case, parties, who become interested in the land subsequent to the original sale, have a right to conclude, and act accordingly, that the vendor was either satisfied with his other security, or had actually received payment. They ought not, after such a length of time has elapsed, without any effort on the part of the vendor to charge the land with the payment of the purchase money, to be molested or disturbed in the enjoyment of property honestly acquired, and for which they have paid a full consideration. There must be a time when they may repose with some decree of security upon their titles. The most serious consequences would result to creditors and purchasers, if a vendor was to be permitted, after remaining passive for years, to set up and enforce a lien, which had its origin in a mere presumption of the law, and not in virtue of any contract between the parties to the sale. The whole doctrine of implied liens is of very questionable policy. As respects third persons, it ought not in any wise to be extended or enlarged. If vendors are not vigilant in the assertion of rights of this character, they do not deserve, nor should they receive any favor or assistance at the hands of the Courts. There is no good reason for allowing them the same period of time in which to enforce an implied lien, that the law gives them in the case of liens created by the express act of the parties. The two classes of liens ought not to be put on the same footing. There is a material distinction between them, and there is a manifest propriety in recognizing the distinction in enforcing them. The one is implied by the law, and rests in parol, and about the existence and

extent of which parties may well be mistaken; the other originates in positive contract, is evidenced by writing, and free from all doubt and uncertainty. No possible injury can result to the vendor of real estate, in requiring him to enforce an implied lien within a reasonable time. He has the right on the sale of the land, to exact security, respecting which no question can arise. If he neglects to do this, and instead thereof relies upon an implied lien, from the very nature of which, creditors and purchasers are liable to be surprised and deceived, he cannot complain if the Courts refuse him any assistance in enforcing it, after a reasonable time has been allowed him to assert his rights. He is the cause of the difficulty in the first instance, and he should not be permitted to increase it, by remaining silent and inactive, and thereby lulling others into a false security. In the present case, aside from the legal presumption, it is very evident that the parties to the original sale never intended to reserve any lien on the land, to secure the payment of the purchase money; and it is equally evident, that John S. Wright and the present owners believed that they were acquiring an indefeasible estate in the land. We can hardly believe that they would have purchased the land, and made full payment therefor, if they had for one moment supposed the original purchase money was a charge on the land. There is certainly no equity in compelling them, at this late day, to pay off that purchase money, in order to save the land. The fault is in the complainants, in sleeping on their rights. If they had pursued their remedy against the land in due time, Wright and his grantees might have reimbursed themselves for the loss of the estate, by proceeding against Temple for a breach of the covenants contained in his deed. It may be, that he was then solvent, and fully able to pay the notes, or respond to them in damages on his covenant of warranty. But they would now be without remedy against him, in consequence of his discharge from liability by the decree in bankruptcy. If they were now to pay off and discharge the claim, a substitution to the rights of the complainants, if allowable, would not avail them, for the sureties to the notes are irresponsible. But this is not as strong a case as many others that would arise, if the principle was to be admitted, that a vendor might pursue his remedy for the enforcement of an implied lien, at any time within twenty years—the time when the law raises the presumption that a

mortgage has been paid; and the vendor must be allowed that length of time to prosecute his remedy, if no distinction is to be made between express and implied liens. The rule to be laid down must be general, and applicable to all cases depending on the same principles, although differing in many of the circumstances surrounding them. Cases would be very likely to arise, where parties had purchased lands and paid a full and adequate consideration, with notice that the purchase money of a prior sale was unpaid, but without any actual knowledge that a lien was reserved or relied on for its payment, and who had gone on in good faith and made valuable improvements, which, together with the lands, would be swept away from them at the end of twelve or fifteen years, by the first vendor asserting a lien, of which he, although residing in the immediate vicinity and cognizant of all the facts, had hitherto remained profoundly silent. It is not a sufficient answer to say, that the purchasers were bound to know the law, and it was their own fault if they purchased and improved the lands, under such circumstances. In my judgment, it would be far better to overrule the doctrine of implied liens altogether, than to suffer such injustice to be perpetrated, and that, too, through the medium of Courts of Equity, which, it is said, delight in justice, and reprobate iniquity. The rules applicable to real estate ought to be clearly defined, and capable of being easily understood, so that there may be some security and stability in the titles to estates. This ought to be a favorite object of the law. Whatever has a contrary tendency should be discountenanced. If estates are to be affected by secret liens, those claiming any benefit under them, ought, at least, to be active in making known their rights, and diligent in enforcing them. The complainants show no excuse for the long delay in asserting their claim against the land. It is true, that, shortly after the last note became due, they caused payment to be demanded of John S. Wright, who had previously sold the land and received full payment of the price; but there is no proof, if indeed that would help their case, that they ever insisted on payment from his grantees, or even notified them that they relied on a lien.

The decree of the Circuit Court is affirmed.

*Decree affirmed.*