# THE SUPREME COURT

OF THE

# STATE OF ILLINOIS,

OF CASES ARGUED AT

## APRIL TERM, 1862, AT OTTAWA.

---

MATTHEW B. FINLAY, Plaintiff in Error, *v.* THOMAS
S. DICKERSON *et al.*, Defendants in Error.

### ERROR TO COOK.

A provision in a voluntary assignment which directs that the assignee "shall, as soon as conveniently may be," sell, etc., will not vitiate; it will be intended that the sale is to be made at a proper time, etc., for the benefit of the creditors. No discretion is given by such a clause but such as the law would imply.

A clause in such an assignment which provides, that if there is any excess after paying the preferred creditors, that it shall be divided *pro rata* among such other creditors as shall assent thereto," is not an attempt to coerce such as are not preferred creditors, to accept the assignment, and will not invalidate it.

A provision which requires the assignee to return to the assignor whatever surplus there may be after the payment of all the debts of the latter, is not obnoxious.

If the assignee is only chargeable with his actual receipts, etc., and for his wilful defaults, and not for any loss or damage in or about the execution of the trust, the assignment will be vitiated, as stipulating for a smaller degree of diligence than the law imposes.

The defect of such a clause is not cured by a covenant by the assignee, that he will faithfully execute all the trusts imposed upon him by the assignment.

2

Finlay *v.* Dickerson *et al.*

THIS was an action of foreign attachment, commenced by Thomas S. Dickerson, plaintiff, in the Circuit Court of Cook county, on the first day of November, 1859, against R. G. Howland and William C. Jones, defendants, the latter only being a non-resident, on a joint debt against the said Howland and Jones, and amounting, as sworn to, to the sum of $979.34, and being for goods sold and delivered.

The usual affidavit and bond were filed, and the usual writ in such cases issued to the sheriff of Adams county on the day aforesaid, returnable to the November term of said court, Nov. 21, 1859, and directing the property of Jones to be attached. R. G. Howland to be summoned, and Matthew B. Finlay and —— Howland to be summoned as garnishees of said Jones.

This writ was, on the 18th day of November, 1859, returned by said sheriff, not found as to Jones, and served on the 15th of said month on Howland, defendant, and Finlay and —— Howland, garnishees.

On the 6th day of December thereafter, the plaintiff filed his declaration in said cause, counting on the defendants owing him $1,500 for goods sold and delivered, the same sum for other goods sold and delivered, the same sum for money lent, the same sum for money paid, the same sum for money had and received, the same sum for interest, the same sum for work and labor, etc., and the same sum on account stated; and alleging damages, $1,500. And the plaintiff at the same time also filed the usual interrogatories to garnishees.

There was filed in said court a copy of notice, and certificate of publication of the same, which certificate is as follows:

" We, the undersigned, publishers of the *Chicago Press and Tribune*, do hereby certify, that a notice, of which the annexed is a true copy, was published four consecutive weeks next after the 20th day of November, 1859, in the daily edition of the *Chicago Press and Tribune*, a newspaper published in, and of general circulation through the county of Cook, and State of Illinois.

PRESS AND TRIBUNE CO.,

" CHICAGO, ILLINOIS, February 2, 1860.          By G. D. WILLISTON."

On the 15th day of October, 1860, judgment by default was entered against the defendants, Howland & Jones, and the

court assessed the damages at $1,149.98, and rendered judgment for the same. And the said plaintiff having theretofore filed interrogatories to the garnishees, Howland and Finlay, a conditional judgment was rendered against them at the same term for $1,149.98, and a *scire facias* ordered.

On the 19th day of October, 1860, the said Matthew B. Finlay filed in said court his answer as garnishee in said cause, denying that at the time of the service of said writ on him, or since, he was or has been indebted in any manner to the said defendants, or either of them, and also denying that he did then have or since has had in his possession or control, custody or charge, any moneys, goods, chattels, choses in action, credits or effects, which ever belonged to said defendants, or either of them, other than what he received before service of said writ, from the said Jones, (who had been the owner of the same), under and by virtue of a certain assignment made by said Jones in good faith to the said Finlay, on the 13th day of May, 1859, and which is substantially as follows:

An Indenture, made and concluded this 13th day of May, 1859, between William C. Jones, party of the first part, and Matthew Finlay, party of the second part, and the several other parties whose names are hereunto subscribed, creditors of the said Jones, parties of the third part, Witnesses, that whereas the said Finlay has incurred divers liabilities as security for the said Jones, and he is indebted unto the said parties of the second and third part, in divers sums of money, which he, the said party of the first part, is unable to pay at present. Now, therefore, this Indenture witnesseth, that in consideration of one dollar, etc., and of the trusts hereinafter created, the said party of the first part does hereby grant, sell, convey, assign, transfer and set over unto the said party of the second part, all the goods, chattels, wares and merchandise, machinery and tools, etc., and also all notes and accounts payable to the said Jones, or to the late firm of Howland & Jones, and also all the right, title and interest of the said Jones to a certain lease, etc., describing it, and all the estate and interest of the party of the first part therein. Upon trust, however,

that he, the said party of the second part, his executors and administrators, do and shall, as soon as conveniently may be, make sale and dispose of such parts of said property as are in their nature saleable, for the best prices in money that can be reasonably had or obtained for the same, and shall collect and get in so much and such parts thereof as are in their nature not saleable; and it is hereby declared and agreed that the said party of the second part and his executors shall stand possessed and interested in the aforesaid property, and the money to arise by such sale or sales, and to be called in and received as aforesaid upon trust, and to the intent that he or they shall and do, in the first place, pay and return to and reimburse himself or themselves all such costs, charges and expenses as he or they respectively shall or may pay, sustain or expend in or about such sale or sales to be made as aforesaid, or in collecting or getting in the debts and sums of money mentioned, to be hereby assigned as aforesaid, and do and shall then also pay the expenses of preparing and executing these presents, and all costs, charges and expenses incident thereto, or which may be incurred or sustained in or about the execution of the trusts herein expressed, or any of them, including reasonable compensation for the service of said Finlay. And then in trust that he, the said party of the second part, and his executors and administrators, do and shall apply the residue of the proceeds of said property, firstly, to the payment of the following debts, that is to say : here describing divers debts. And if thereafter anything shall remain of the proceeds of said property, the same shall be paid *pro rata* to the other creditors of the said Jones and the creditors of the late firm of Howland & Jones who shall assent hereto, and if anything shall remain after the payment of said debts, then such surplus to be paid to the said Jones or his legal representatives.

And for the consideration and purpose aforesaid, the said Jones hath made, constituted and appointed, and by these presents doth appoint the said Finlay, his executors and administrators, his true and lawful attorney and attorneys, in the name of said Jones, or otherwise, to adjust, settle and

liquidate all accounts and notes relating to the premises, and from time to time to collect, get in and use, and take all or any legal or equitable means, course or expedient, for the recovery and receipt of all the debts and sums of money mentioned, to be hereby assigned as aforesaid, and upon the receipt thereof, or any part thereof, receipts, acquittance and other effectual discharges for the same, or so much thereof respectively as shall be then acknowledged or expressed to have been received, to make, sign, seal and deliver and compound for any bad or dubious debt or debts, and one or more attorney or attorneys, agent or agents, under him or them, for all or any of the purposes aforesaid, from time to time, and again at his or their pleasure to displace; and further to do and execute all and every other act and acts requisite or expedient to be done in or about the premises, as fully and amply to all intents and purposes, as he, the said Jones, might or could do, or have done in his own proper person, if these presents had not been made. And the said Jones, for himself, his heirs, executors and administrators, doth covenant, promise and agree, to and with the said Finlay, his executors and administrators, that the said Jones shall and will, at all times hereafter, justify and allow, ratify and confirm all and whatsoever he, the said Finlay, his executors and administrators, shall lawfully do or cause to be done, in or about the premises, and shall not nor will revoke or make void any of the powers hereby given, or in pursuance of these presents, to be given to the said Finlay, his executors and administrators, nor release, discharge or compound any of the debts or sums of money hereby intended to be assigned as aforesaid, nor sue for or intermeddle with the same, or any part thereof, nor do anything whereby the recovery thereof, or any part thereof, shall in anywise be hindered and prevented, nor otherwise act or interfere in and about the premises, further and other than the said Finlay shall direct, devise or require; also, that he, the said Finlay, and his executors and administrators, shall be charged and chargeable with his or their respective receipts, payments, acts, and willful defaults, and not otherwise; and shall not be charged or chargeable with or for any sums of money other

than such as shall actually and respectively come to his or their hands, nor with or for any loss or damage which shall or may happen in or about the execution of any of the trusts, without his or their willful default. And it is further agreed, that the said Finlay may cause the property aforesaid, or any part thereof, to be insured at his discretion, and deduct the premium of such insurance, as expenses as hereinbefore provided, for the deduction of expenses. And the said Jones further agrees, that upon reasonable notice he will attend the said Finlay, and assist him in making and adjusting all accounts relating to the assigned premises and property; and the said Jones covenants that he will, at the costs of the party desiring the same, perform and execute all further reasonable acts necessary to the performance of said trusts, and for further and better assuring and assigning the property aforesaid hereinbefore mentioned, and intended to be assigned, and for enabling the said Finlay to collect, recover and receive the same, or any part thereof. And the said Finlay covenants on his part, that he will faithfully execute all the trusts herein and hereby reposed in him as aforesaid, so far as he may be able, with reasonable diligence, to perform the same.

In witness whereof, the parties hereto have hereunto set their hands and seals, etc.

The answer further shows, that the property so received by the said garnishee amounted in value only to $2,845.05, and that at and from the time of said service on him, and till the filing of said answer, he had in his hands derived from said property, only the sum of $968.56, and three promissory notes obtained from the sale of said property by him, as follows, to wit:

One note from Scheipering & Co. to said garnishee, for $386, due February 10, 1860.

One note from same to same, for $220, due April 11, 1860.

One note from same to same, for $220, due June 10, 1860.

Having in good faith before the time of said service, sold all of said property and collected all debts that could be collected, and paid over the remainder of said funds, according to the terms of said assignment, to persons thereby entitled,

and the same being all that could be realized from said assigned property by reasonable diligence in the management of the same. And that all the creditors of said Jones, except the said Dickerson and one James Parnell, had before said service assented to said assignment. And that the funds that came into the hands of said garnishee from the assigned property, were insufficient to pay the claims of those creditors who had assented to the assignment.

And afterwards, to wit, on the 28th day of June, 1861, the said cause came on to be heard on the answer aforesaid of said garnishee, and his motion to be discharged. Whereupon the court set aside said conditional judgment, and rendered judgment in favor of the said R. G. Howland and the said William C. Jones, for the sum of $1,149.98, with costs of suit for the use of said plaintiff, and against said Finlay, and ordered execution therefor. And that the said moneys when collected be applied to the said original judgment.

To reverse this last mentioned judgment, the said Finlay seeks a writ of error and supersedeas, to restrain further proceedings in said cause until the same may be heard.

The errors assigned in this cause are, in substance :

Rendition of said judgment, and that the garnishee, Finlay, instead of having a judgment rendered against him, ought to have been discharged.

That if any judgment should have been by law rendered against the said Finlay as garnishee, it should not have been rendered in favor of the said Howland & Jones for the use of said plaintiff, but, on the contrary, in favor of the said Jones alone, for the use, etc.

That the judgment rendered was too great in any event ; the answer only disclosing $968.56, in the hands of the garnishee, and the judgment being for $1,149.98.

WHEAT & GROVER, for Plaintiff in Error.

Before any valid judgment could by law have been rendered against the garnishee, a valid judgment must have previously been rendered against the defendant in attachment. 1 Purp. Stat., p. 100, sec. 11.

There was no such judgment in this case. The apparent judgment on the record in this case against Jones was a nullity, because the certificate of publication of the printer, copied in the record, furnishes no evidence at all that any publication of notice was ever made.

In order that such certificate should be evidence, it should have stated the dates of both the first and last paper containing the same. 1 Purp. Stat., p. 77, sec. 1.

In respect to the first error assigned, the answer states the assignment to have been made in good faith. This must be taken as true and admitted, as a matter of fact. That the plaintiff in error owed nothing and held nothing, except under said assignment. If this is valid, his defense was complete.

The covenant of the assignor to the assignee, in the first part of the deed, that the assignee shall not be held liable to the assignor except for actual receipts and willful defaults, when construed in connection with the covenant of the assignee in the last part of the deed to all the parties interested, that he will faithfully execute the trusts, etc., does not invalidate the assignment. *McIntyre* v. *Benson*, 20 Ill. 502, 503 ; Burrill on Assignments, 374 ; 2 Par. on Contracts, 12 ; *Grover* v. *Wakeman*, 11 Wend. 187—192 ; *Brigham* v. *Tillinghast*, 15 Barb. 618, 620 ; *Jacobs* v. *Allen*, 18 Barb. 549.

An assignment, like any other instrument in writing, should be so construed as to render it legal and operative rather than illegal and void. Burrill on Assignments, 374, and cases there cited ; 11 Wend. and 15 Barb. above ; 22 Wend. 488.

Construing together the clause in the assignment declaring the trusts, and the covenant of the assignee, their meaning is this and this only, as is supposed : that the assignee is to convert the property, as soon as it can conveniently be done with reasonable diligence, into money—that is to say, without unnecessary trouble, expense, or delay. It is not supposed such provisions render the assignment invalid, or, in other words, conclusive evidence of fraud. Burrill on Assignments, 197 ; *Cunningham* v. *Freeborn*, 11 Wend. 256, 257.

The clause in the assignment which provides that if anything remains after the payment of all the creditors who as-

sent to the assignment, (which in this case is nothing more or less than that they will receive the money raised from the sale of the property assigned) to the extent of their debts, the surplus shall be paid to the assignor or his legal representatives, cannot make the assignment invalid. Such a provision is only a declaration of what the law would be in the absence of any provision in that respect in the assignment. *Conkling* v. *Carson*, 11 Ill. 510; *Hendman* v. *Dill*, 11 Ala. 689; *Grimshaw* v. *Walker*, 19 Ala. 101; *Austin* v. *Johnson*, 7 Ham. 191. Also see 2 Kent, 9th ed. 728 to 734, and notes.

C. BENTLEY, for Defendants in Error.

Were the assets in the hands of the garnishee subject to the attachment?

The answer of the garnishee that he held the assets under and by virtue of an assignment, will not of itself protect them. The *bona fides* of the assignment must be made to appear. *Howell* v. *Edgar*, 3 Scam. 417; *Born* v. *Staaden*, 24 Ill. 320.

Is the assignment valid, or fraudulent in law, and void?

We shall endeavor to point out a few of the provisions of the assignment, which, upon well settled principles of law, and upon authority, render this instrument fraudulent and void, as to attaching creditors.

The assignment contains the provision that the assignee "shall, as soon as conveniently may be, make sale, and dispose of such parts of said property as are in their nature saleable," etc.

This language vests in the assignee discretionary power as to the time of selling and disposing of the property assigned. It is left wholly to the convenience of the assignee. Webster defines the word "conveniently" by such words as "fitly," "suitably," "easily," "without trouble or difficulty."

Under the language of the assignment, then, the assignee may delay the sale of the property until, in his judgment, it can be done "easily," "without trouble or difficulty." The direct effect of this may be to hinder and delay the creditors, and is obnoxious to the statute, which declares that:

"Every conveyance of goods and chattels had and made,

or contrived of malice, fraud, collusion, or guile, to the intent or purpose to delay, hinder or defraud creditors of their just and lawful suits, debts, accounts, damages, etc., shall be utterly void," etc. Rev. Stat., p. 541, sec. 2.

This statute must be construed strictly. And it is not altogether a question of intent, but if the purpose, in legal effect, is to hinder or delay creditors, it is equally void as if such was the intent. And this purpose is determined by the language of the instrument itself. The clause above alluded to, it seems to us, amounts to no less than an unqualified authority to the assignee to delay the creditors. *Woodburn* v. *Mosher*, 9 Barb. 255.

The assignment, after providing, as above, for the sale and disposal of the property, and for appropriating and paying, out of the proceeds thereof, certain preferred creditors, contains the following provision :

" And if, thereafter, anything shall remain of the proceeds of said property, the same shall be paid *pro rata* to the other creditors of said Jones, and the creditors of the late firm of Howland & Jones, who shall assent thereto."

This is an attempt at coercion of the creditors. It is not an unconditional surrender of the effects of the assignor for the benefit of those to whom they rightfully belong. It is saying, in effect, to the unpreferred creditors, you shall stand in abeyance, be postponed and delayed, until the effects are, at a time convenient to the assignee, converted into money, and certain other creditors are paid, and then, if anything remains, you shall have a proportion of the balance ; not certainly, indeed, not absolutely, but in case you approve my course, and assent to this assignment ; otherwise, if you do not comply with my terms, the money, or proceeds of my property, shall be returned to me, for me to dispose of as I may think proper.

Senator Tracy, in the case of *Grover* v. *Wakeman*, 11 Wend. 189, wisely remarked, " If a debtor be allowed to proceed beyond the single purpose of paying his debts, it is not easy to see at what point he can be arrested."

Assignments are not favorites in the law. And it is only

when they are unconditional in the surrender of the property of the debtor, and the proceeds are fairly and fully appropriated to the payment of debts, without onerous conditions to the creditors, reserving only to the assignor the right of prescribing the order of distribution, that they are sustained by the courts.

Still another provision of the assignment, which we deem fatal to its validity, and above partially alluded to, after the provision requiring the assent of the creditors, defrauds the creditors in this, that it provides "that if anything shall remain after the payment of said debts, then such surplus to be paid to the said Jones or his legal representatives." This is something more than the declaration of a resulting trust that the law would raise.

Such a resulting trust as the law would raise and support, would be, only the returning of such residue as there might be, after all the debts were fully paid.

What is the effect of this provision ? It is to place the property beyond the reach of those creditors who will not assent to the assignment, beyond the scope of legal process, to be converted into money, and then returned into the hands of the assignor himself. The least that can be said of such a provision is, that it hinders, postpones and delays, if it does not finally wholly avoid creditors.

In support of the proposition that both of the last named provisions invalidate the assignment, if not *per se*, at least as to attaching creditors, we cite the following authorities: *Hyslop* v. *Clarke*, 14 John. 458; *Riggs* v. *Murray*, 2 John. Ch. R. 565; *Seaving* v. *Brinkerhoff*, 5 John. Ch. R. 328; *Austin* v. *Bell*, 20 John. 442; *Grover* v. *Wakeman*, 11 Wend. 189; *Mackie* v. *Cairns*, 5 Cow. 547; *Howell* v. *Edgar*, 3 Scam. 417; *Goodrich* v. *Downs*, 6 Hill, 438; *Strong* v. *Skinner*, 4 Barb. 546; *Barney* v. *Griffin*, 2 Comst. 365; *Marsh* v. *Bennett*, 5 McLean, 117; *McIntyre* v. *Benson*, 20 Ill. 503; *Callum* v. *Caldwell*, 16 N. Y. 484.

The next provision of the assignment which we point out, is as follows :

" And also, that he, the said Finlay, and his executors and

administrators, shall be charged and chargeable with his or their respective receipts, payments, acts and willful defaults, and not otherwise ; and shall not be charged or chargeable with or for any sums of money other than such as shall actually and respectively come to his or their hands, nor with or for any loss or damage which shall or may happen, in or about the execution of any of the trusts, without his or their willful defaults."

This clause in an assignment, having been repeatedly held by this court as making the deed containing it fraudulent and void, it seems unnecessary to do more than allude to the decisions heretofore made. *McIntyre* v. *Benson,* 20 Ill. 50 ; *Robinson* v. *Nye,* 21 Ill. 592. See also, *Litchfield* v. *White,* 3 Selden, 438.

WALKER, J. If this deed is to be held fraudulent, as hindering and delaying creditors, it must be from the provisions of the deed itself, as there was no extraneous evidence impeaching its validity, and the answer of the garnishee alleges that it was made in good faith. It is insisted that the provision requiring that the assignee " shall, as soon as conveniently may be, make sale and dispose of such parts of said property as are in their nature susceptible, for the best price in money that can be reasonably had or obtained for the same," gives to the assignee discretionary power as to the time when the sale shall be made, and only has reference to the convenience of the assignee, and not the interest of the creditors which he represents. The word "convenient" is defined by lexicographers to be, " fit, suitable, proper, adapted," as its primary or ordinary meaning. This, then, required the assignee to make sale in a fit, suitable, or proper manner. In doing so, it is required to be done at a suitable time, for a proper price, after giving a fit opportunity for competition, all adapted to the interest of the parties, the nature of the property, and to effectuate the objects of the trust. By applying the secondary meaning of the word, it might be held to apply to the mere convenience of the assignee, but the rules of construction require that the intention of the parties must be ascertained from the instrument itself.

To ascertain that intention, the primary and popular meaning of words will be adopted, unless it is obvious from the context that they are not employed in that sense. When the popular meaning is applied to this term, it is as apt and proper as any word that could have been employed by the draftsman ; and nothing is perceived in the context that indicates that any other meaning was intended. We are, therefore, of the opinion that the assignee, in conducting the sale, had no discretion conferred which was not implied by the law ; that it required him to make the sale at a suitable time, and in a manner best calculated to promote the interest of the parties. *Sacket* v. *Mansfield,* 26 Ill. 21.

It is also urged, that the clause in the deed which provides that if, after the sale of the property and the payment of the preferred creditors, " anything shall remain of the proceeds of said property, the same shall be paid *pro rata* to the other creditors of said Jones, and the creditors of the late firm of Howland & Jones, who shall assent thereto," is an attempt to coerce the creditors who are not preferred to assent to the provisions of the assignment. That it is not an unconditional surrender of the property and effects of the debtor, for the benefit of his creditors. Whatever might have been our conclusion in the light of more modern decisions of the courts on this question, we regard the question settled by the former adjudications of this court, too long acquiesced in as the law to be lightly disturbed. In *Conkling* v. *Carson,* 11 Ill. 503, it was held, that a provision of this character did not affect the validity of the assignment. The court says, " The creditors were left free to become parties to the assignment, and participate in its benefit without impairing their right to proceed against the assignors, for any balance that might remain due them, after the execution of the trust."

This provision places these creditors in no worse condition than they would have been, if the deed had contained no provision for their benefit. To assent to the provisions of the deed, required them to release no right which they enjoyed. This is wholly unlike a provision, requiring creditors to release the remainder of their claims, before they can par-

ticipate in the fund. We can perceive no possible injury resulting from the insertion of this clause in the deed, but a possible benefit to this class of creditors. We are therefore disinclined to depart from the rule announced in *Conkling* v. *Carson*.

It is likewise contended, that the provision which requires, that if anything shall remain after paying all the debts of the assignor, and of Howland & Jones, that it shall be paid to the assignor, or to his legal representatives, renders the instrument void. The case of *Cross* v. *Bryant*, 2 Scam. 36, and the case of *Conkling* v. *Carson*, both hold, that such a provision forms no objection to the validity of an assignment. It is no more than the law would require, independent of such a clause. Who else would have a right to receive the surplus? When all the debts are paid, and the purposes of the trust accomplished, why should not the trustee pay the surplus to the assignor? When the debtor has surrendered all of his property, and when it has paid all the creditors in full, what right have they to object to his receiving any balance that may remain?

It is furthermore and most earnestly urged, that the clause which provides, "That he, the said Finlay, and his executors and administrators, shall be charged and chargeable with his or their respective receipts, payments, acts and wilful defaults, and not otherwise, and shall not be charged or chargeable with or for any sums of money, other than such as shall actually and respectively come to his hands, nor with or for any loss or damage which shall or may happen, in or about the execution of any of the trusts, without his or their wilful defaults," manifestly renders the transaction inoperative and void. In support of this position, the cases of *McIntyre* v. *Benson*, 20 Ill. 500, and *Robinson* v. *Nye*, 21 Ill. 592, are relied upon as conclusive of the question. In the first of these cases, it was held, that a covenant by the assignee to execute the trust faithfully according to the stipulations contained in the deed, being responsible only for wilful defaults, rendered the assignment void. In the latter case, the deed contained an express stipulation, that the trustee should not be liable for

more money or effects than he should receive, nor for any loss or damage which might happen thereto, except the same should arise through his wilful default. This was held to vitiate the deed of assignment. And it was for the reason that the parties had stipulated for a less degree of diligence than the law imposes, and which is calculated to endanger the rights of creditors. It licensed negligence, and inattention to the execution of the trust, which the law can never sanction. These provisions are substantially the same as that contained in the deed under consideration, and they must be held conclusive of this case, unless the effect of the clause is changed by some other provision in the deed.

It is contended, that the covenant of the assignee contained in the deed, has that effect. It is this : " And the said Finlay covenants on his part, that he will faithfully execute all the trusts herein and hereby reposed in him as aforesaid, so far as he may be able with reasonable diligence to perform the same." By this covenant, he binds himself faithfully to execute all the trusts reposed in him. But how is he to execute them ? Is it according to law ? It is not, but as they are reposed in him by the deed. He covenants to execute them in the manner specified. And they are imposed in such a manner by the deed, that he shall not be liable except for wilful defaults. This is the scope and effect of this covenant. It in no manner limits or controls the former provision, but he only obligates himself to execute them upon those terms. And if guilty of any negligence or omission of duty short' of a wilful default, he would not be liable. It is not contended, that any other clause of the deed modifies or controls the objectionable provision, nor is any such perceived. We are, for these reasons, of the opinion that the trust deed was void, and that the judgment of the court below must be affirmed.

*Judgment affirmed.*