## CHARLES O. BOYNTON

*v.*

## HORACE S. CHAMPLIN.

1. VENDOR'S LIEN — *not favored.* The implied lien of a vendor of land for unpaid purchase money, is the creature of courts of equity, springing up without bargain and without promise, generally unknown to the world, and frequently operates injuriously on the rights of creditors and purchasers, and ought not to be given effect where evidence exists of its waiver.

2. SAME — *what constitutes a waiver.* The mere taking of the bond, note or covenant of the purchaser of land, will not operate as a waiver of the vendor's lien thereon for the unpaid purchase money; but where a distinct and independent security is taken, either of property or of the responsibility of a third person, the vendor's lien is gone.

3. So where the vendor takes, as security for the purchase money, a bill of exchange drawn by his vendee upon a third person, and accepted by the latter, he takes an independent security which extinguishes his lien upon the land. The acceptor of the bill becomes the principal debtor; he places himself in the condition of the maker of a note, and is primarily liable to the vendor, in whose favor it is drawn.

APPEAL from the Circuit Court of De Kalb county; the Hon. T. D. MURPHY, Judge, presiding.

This was a suit in chancery instituted in the court below by Horace S. Champlin against Charles O. Boynton, Morris Walrod, Robert H. Walrod, Benjamin Page and James S. Waterman, to enforce a vendor's lien, claimed by the complainant, upon the north half of the south-west quarter of section twenty, in township forty, north of range five, east of the third principal meridian, situate in De Kalb county.

It appears, that, on the 31st of March, 1857, the complainant, Champlin, sold the premises to Morris Walrod, and took in payment therefor, or as security for the purchase money, a bill of exchange drawn by Morris Walrod, the vendee, upon George Walrod, which was accepted by the latter before Champlin conveyed to his vendee. The defendants, Boynton, Robert H. Walrod, Page and Waterman, are alleged to be subsequent purchasers and creditors, with notice of complainant's equitable

lien, he averring that George Walrod refuses to pay the money.

On the hearing, the court decreed that the complainant held an equitable lien upon the land for the unpaid purchase money represented by the bill of exchange.

Boynton thereupon took this appeal. The only question considered by the court is, whether the taking of the bill of exchange by the vendor was a waiver of his lien.

Mr. R. L. DIVINE, for the appellant.

The appellee's alleged vendor's lien was waived, by taking distinct security in the shape of a bill of exchange, drawn by Morris Walrod on George Walrod, for $1,800, the unpaid portion of the purchase money, and which was accepted by George Walrod, he thereby becoming the principal debtor to Champlin, the appellee, and Morris Walrod being placed in the attitude of surety.

The acceptor of a bill of exchange is the principal debtor, and the liability of the drawer is only secondary or collateral.

" The act of accepting a bill of exchange, is like the making and delivery of a promissory note." Edwards on Bills and Notes, 405.

" He (the acceptor) is primarily liable to pay the bill, and the drawer and indorsers are liable on his default." Chitty on Bills, 183.

Taking this independent security, which consisted of George Walrod's personal liability, to which was superadded the liability of Morris Walrod, in the character of a surety or drawer, was a waiver of the pretended vendor's lien.

" The mere taking of the bond, bill or note of the vendee, is not of itself regarded as an act of waiver, for such instruments are only the evidence of the debt. But the taking of the bond, bill, or note of the purchaser with security, is evidence that the vendor does not rely on the lien, but on the security, and extinguishes the lien. The lien is also discharged, by the taking of any independent security, such as a deposit of stock,

a pledge of goods, or the responsibility of a third person." *Conover* v. *Warren et al.*, 1 Gilm. 501.

"Notwithstanding the decision of the master of the rolls in *Grant* v. *Mills*, 2 Ves. and Beames, 306, holding that a bill of exchange, drawn by the vendee, and accepted by him and his partner, did not waive the lien; the sounder doctrine and higher authority is, that taking the responsibility of a third person, for the purchase money, is taking security, and extinguishes the lien." 4 Kent's Com. 153.

In *Gilman* v. *Brown*, 1 Mason, 215, it was said by STORY, J.: "On a careful examination of all the authorities, I do not find a single case in which it has been held, if the vendor takes a personal collateral security, binding others as well as the vendee, as, for instance, a bond or note, with a surety or an indorser, or a collateral security by way of pledge or mortgage, that under such circumstances a lien exists on the land itself. * * * Looking to the principle upon which the original doctrine of lien is established, I have no hesitation to declare, that taking the security of a third person for the purchase money, ought to be held a complete waiver of any lien upon the land."

Messrs. RUNYAN & AVERY, for the appellee.

The taking of a bill of exchange is *prima facie* a satisfaction of a debt, but only that. Chitty on Bills, 172, 173; 5 Tenn. 513.

An express and clear agreement by the creditor to take a bill as payment at all events, and whether honored or not, would amount to a payment of the debt, but in the absence of such stipulation, even a partner of the debtor, unknown until the dishonor, may be sued. Chitty on Bills, 173, note *a ; Brown* v. *Hawley*, 2 Bosw. & Pul. 518; 3 Chitty Com. Law, 131.

A vendor does not waive his lien on his estate by taking the promissory note or acceptance of the vendee, and receiving its amount by discount. Chitty on Bills, 174; *Ex parte Loaring*, 2 Rose, 79; *Grant* v. *Mills*, 2 Ves. & B. 306; Chitty, Jr., 893.

When real property was devised to trustees in trust to sell and pay the produce to the children of the testator, and the children sold the property to one of the executors in consideration of a sum secured by bills payable by installments, and as to some shares further secured by an assignment of a policy of insurance, and the executor became bankrupt without having paid the bills, it was held, that the children all had a lien on the estate for the sums unpaid. *Ex parte Loty,* 2 Mont. & Ay. 609; 1 Dea. 557, *S. C.*

In general, when the bill is dishonored, and the holder uses due diligence, not only the parties to the bill are liable to be sued thereon, but the first liability on the original consideration revives. *Smith* v. *Wilson,* Andr. 187; *Papley* v. *Ashley,* 6, 147, (Chitty, J., 225); *Ward* v. *Evans,* 2 Lord Raymond, 928; *Hickling* v. *Hardy,* 7 Lamb, 312; *Bishop* v. *Rowe,* 3 Manh. & S., 363 (Chit., J., 921.)

It has been decided, that, when the manager of a colliery pays a creditor on the colliery with a bill, which is not paid, the colliery remains liable to the payment of the original debt. *Tempest* v. *Ord,* 1 Mod. 89.

In a sale of goods the law implies a contract that those goods shall be paid for; the same rule applies to land. It is competent to the party to agree that the payment shall be by a particular bill. In this instance it would be extremely difficult to persuade a jury, under the direction of a judge, to say an agreement to pay by bills was satisfied by giving a bill, whether good or bad. In the action upon the bill in this cause, the jury decided that the giving of the bill was no · payment. *Scroggs* v. *Goss,* 8 Yerg. 175; *Tobey* v. *Barber,* 5 Johns. 68; *Wilson* v. *Ford,* 6 id. 110.

. If a party receive in payment for goods, or lands, sold, counterfeit bank notes, or other notes which have no value, it is not a payment, although the debtor paid them *bona fide.* *Markle* v. *Hatfield,* 2 Johns. 455; *Ellis* v. *Wild,* 6 Mass. 331; *Burd* v. *Cook et al.,* 15 Johns. 241; *Kune* v. *Thompson,* 4 Gill & Johns. 463.

The taking of a bill of exchange is, at most, only *prima*

*facie* evidence of a satisfaction and extinguishment of an antecedent debt, in this case of payment of the purchase money, liable to be rebutted, which is effectually done. *Varner* v. *Nobleborough*, 2 Greenl. 121; *Wallace* v. *Agry*, 4 Mason, 336.

Purchase money is the consideration which is agreed to be paid by the purchaser of a thing in money. It is the duty of the purchaser to pay the purchase money as agreed upon in making the contract, and, in case of conveyance of an estate before it is paid, the vendor is entitled, according to the laws of England, which have been adopted in several of the States, to a lien on the estate, for the purchase money so remaining unpaid. This is called an equitable lien. *Chapman* v. *Tannar*, 1 Nem. 267; *Hauffeld* v. *Bower*, 7 S. & R. 73; 6 Yerger, 50; *Outon* v. *Mitchell*, 4 Bibb, 239; *Garson* v. *Green et al.*, 1 Johns. Ch. 308; *Bayley* v. *Greenleaf*, 7 Wheat. 46; *Zubank* v. *Poston et al.*, 5 Monroe, 287; *White* v. *Cozonoves et al.*, Har. & Johns. 106; *Ghislin et al.* v. *Ferguson*, 4 id. 522; *Fisher* v. *Salmon*, 1 Col. 414; *Galloway* v. *Hamilton et al.*, 1 Dana, 576; *Hundley* v. *Lyons*, 5 Mumf. 342; *Wynne* v. *Alston*, Dev. Eq. 163; *Henderson et al.* v. *Stewart et al.*, 4 How. 256; *Watson et al.* v. *Wells*, 5 Conn. 468; *Meeks et al.* v. *Ealys et al.*, 2 J. J. Marsh. 330; *Greenleaf* v. *Strong*, 1 Bibb, 590.

This lien of the seller exists only between the parties and those having notice that the purchase money has not been paid. *Clark* v. *Hunt*, 3 J. J. Marsh. 557; *Lyde et al.* v. *The Fred. Co. Bank*, 3 Gill & Johns. 425; *Blythe et al.* v. *Banks et al.*, 6 Monroe, 198; *Richards* v. *Leaming et al.*, 27 Ill. 431; *Hawkinson et al.* v. *Casey et al.*, 29 id. 80; *Keith et al.* v. *Horner*, 32 id. 524; *Prew* v. *Walters et al.*, 2 Scam. 35; *Willis* v. *Henderson*, id. 19.

Where a vendor delivers possession of an estate to a purchaser, without receiving the purchase money, equity, whether the estate be or be not conveyed, and although there was not any special agreement for that purpose, and whether the estate be freehold or copy-hold, gives the vendor a lien on the land for the money. 3 Sugden on Vendors, 117; *Smith* v. *Hibbard*,

2 Dick. 730; *Charles* v. *Andrew*, 9 Mod. 152; *Tophan* v. *Constantine*, Toml. 135; *Evans* v. *Tweedy*, 1 Beav. 55; *Winter* v. *Lord Anson*, 3 Russ. 488; *Garson* v. *Green*, 1 Johns. Ch. 308; *Gilman* v. *Brown*, 1 Mason, 192; *S. C.*, 4 Wheat. 255; *Irvine* v. *Campbell*, 6 Binn. 118; *Williams* v. *Price*, 5 Mumf. 507; *Slouffers* v. *Coleman*, 1 Yeates, 393; *White* v. *Casonove*, 1 Har. & Johns. 106; *Ridgeley* v. *Carey*, 4 Har. & M. Hen. 167; *Hatcher* v. *Hatcher*, 1 Rand. 53; *Cox* v. *Fenwick*, 3 Bibb, 183; *Kennedy* v. *Woolfolk*, 3 Hager, 197.

The rule of law in relation to real estate is, that the vendor has, without any express agreement for that purpose, a lien on the premises conveyed, even after possession thereof is delivered to the purchaser, for the purchase money, provided he has not taken a distinct and independent security therefor, and the land has not passed by a *bona fide* sale to a third person, without notice. *Lupin* v. *Marie*, 6 Wend. 79.

The vendor's lien is not affected by conveying the premises, and taking a note or bond with personal security for the money. It exists in every case of a sale when the money is not paid, unless it be otherwise agreed by the parties, either expressly or by such arrangements as clearly show their intention; and it is incumbent on the party contesting the lien, to show that it has been relinquished. 3 Sugden on Vendors, 123, note *n; Tierman* v. *Beam*, 1 Ham. 465; *Garson* v. *Green*, 1 Johns. Ch. 308; *Cox* v. *Fenwick*, 3 Bibb, 183; 2 Wash. 142.

If A sells an estate, and takes a promissory note for part of the purchase money, and then the purchaser sells to B, who has notice that A had not received all his purchase money, the land in equity is chargeable in the hands of B with the money due on the note. It would seem, therefore, that in this case the point is perfectly settled. 3 Sugden on Vendors, 124; *Gibbons* v. *Baddell*, 2 Eq. Ca. note *b*, 682; *Ex parte Peake*, 1 Mod. 346; *Coffin* v. *Coffin*, 2 P. Wms. 291; *Sampson* v. *Carke*, 5 B. & Nel. 606; *Henderson* v. *Wilde*, 2 Camp. Co. 561; *Rountree* v. *Jacob*, 2 Taunt. 141; *Bidlake* v. *Arundel*, 1 Cha. 93.

Lord ROSSLYN said, in the case of Towell and Hulis, that there was such a lien, and that it was so from the foundation

of the court. A bargain and sale must be for money paid. If an estate is sold, and no part of the money paid, the vendee is a trustee; then if part be paid, was it not the same as to that which was unpaid? 3 Sugden on Vendors, 125; *Blackburn* v. *Gregson*, 1 Cox, 90; *Norris* v. *Prouse*, 6 Ves. Jr. 752.

Lord REDESDALE held, in a case, that the purchaser's note was nothing but a mere memorandum, put into the hands of a trustee, to enable the purchaser first to pay off incumbrances, and then to be subject to an account, and the balance only to be received by the vendor. It cannot be considered that the vendor relied on it as a security. " Suppose bills given as part of the purchase money, and suppose them drawn on an insolvent house — shall the acceptance of such bills," he asked, " discharge the vendor's lien?" " They are taken," he added, " not as a security, but as a mode of payment." The case upon examination before Lord REDESDALE at this time, would seem to answer every objection that can possibly be made by the appellant in this cause. 3 Sugden on Vendors, 126; *Hughes* v. *Henry*, 1 Scho. & Lef. 132; *Lyon* v. *Chaters*, 2 Hec. 521; *Garson* v. *Green*, 1 Johns. Ch. 309.

In a late case, where the purchase money was paid by bills drawn by the purchaser and accepted by him and his partner, payable to the seller's order, Sir William Grant determined that the lien was not gone. It would seem that that case was much stronger against the vendor than the case now before the court, and the court sustains the vendor's lien. Apply the principle there discussed to the case before the court, and it would seem that the court ought also to sustain the right of the vendor to recover his money out of this property. 3 Sugden on Vendors, 126; *Grant* v. *Shills*, 2 Ves. & Bea. 306; *Macreth* v. *Symmons*, 15 Ves. Jr. 329.

When lands are sold, but the whole of the purchase money is not paid to the vendor, he has a lien in equity on the lands for the amount unpaid. And the circumstance of the vendor having taken from the purchaser a bond or a note for the payment of the money will not destroy the lien. Williams on Real Property, 359; *Conover* v. *Warren et al.*, 1 Gilm. 498.

Mr. JUSTICE BREESE delivered the opinion of the Court:

The only important question made upon this record is, was George Walrod's acceptance of the bill drawn on him by Morris Walrod in payment of this land, a waiver of appellee's lien as vendor of the land?

This court took occasion to say in the case of *Conover* v. *Warren*, 1 Gilm. 498, that these equitable liens on real estate are generally unknown to the world, and frequently operate injuriously on the rights of creditors and purchasers, and ought not to be enforced but in cases where the right is clearly and distinctly made out. And in the case of *The Trustees of Schools* v. *Wright*, 11 Ill. 603, we said: "These secret liens on real estate, because generally, in point of fact — however it may be in legal contemplation — unknown to the parties to be affected by them, are often productive of much injustice, and ought not to be encouraged."

And in *Richards* v. *Leaming et al.*, 27 Ill. 431, we said this lien ought not to be extended beyond the requirements of the settled principles of equity law. It is secret, intangible, springing up without bargain and without promise, and very frequently without any intention or suspicion of either party at the time of the original transaction, and is but the fruit of the will of the chancellor. We are admonished by these observations, to adhere closely to the rule as expounded in courts of equity, whose creature these liens are, and to give no effect to a lien claimed where evidence exists of its waiver. What is considered a waiver of a vendor's lien?

The cases cited on this point by the counsel for appellee are for the most part admitted to be good authority where they apply. They are nearly all based on the text in 3 Sugden on Vendors, 124, which is to this effect as quoted by appellee: If A sells an estate, and takes a promissory note for part of the purchase money, and then the purchaser sells to B, who has notice that A had not received all his purchase money, the land, in equity, is chargeable in the hands of B with the money due on the note. The decisions founded upon this text, on

examination, all proceed on the ground that "the promissory note" taken was the note of the *vendee.* This is apparent from the leading case of *Nairn* v. *Prowse,* 6 Ves. Jr. 752. Taking the vendee's note shows, a credit was given to him, not to supersede the lien, but for the purpose of ascertaining the debt, and countervailing the receipt of the purchase money acknowledged in the conveyance.

Where, however, the vendor accepts the security of a third person, the rule is now well established, though it has been a vexed question, that by such acceptance the lien is gone. The mere taking the bond, note or covenant of the vendee does not repel the lien, but where a distinct and independent security is taken, either of property or of the responsibility of a third person, it is repelled. In the case of *Gilman* v. *Brown et al.,* 1 Mason's Cir. C. 190, STORY, Justice, took occasion to examine and comment on all the cases on this point, and in the course of his opinion he says, on a careful examination of all the authorities, he did not find a single case· in which it had been held, if the vendor took a personal collateral security, binding others as well as the vendee, that under such circumstances a lien exists on the land itself in favor of the vendor. In *Cole* v. *Scott,* 2 Wash. Cir. C. 141, referred to by Justice STORY, it was held, that, if the vendor of land takes security, or the vendee has sold to a third person without notice, this lien is lost. And STORY says, in the case in Mason, that, "looking to the principle upon which the original doctrine of lien is established, he had no hesitation in declaring, that taking the security of a third person for the purchase money, ought to be held a complete waiver of any lien upon the land; at all events it was *prima facie* evidence of a waiver, and the *onus* is on the vendor to prove, by the most cogent and irresistible circumstances, that it should not have that effect. This case decides, that taking negotiable notes of a third party is a distinct and independent security, and that such security extinguished any implied lien for the purchase money. To the same effect is the case of *Conover* v. *Warren et al.,* 1 Gilm. 501, before cited.

The bill drawn by Morris Walrod on George Walrod, in favor of appellee, was accepted by George, and thereby he became the principal debtor, — he placed himself in the condition of a maker of a note, and was primarily liable. In accepting it, appellee took an independent security, which extinguished his lien.

The proof also shows that George Walrod has been at all times ready to take up his acceptance, and pay the appellee whenever he shall demand payment.

We think these considerations dispose of appellee's claim to a lien on this land. The court below having entertained different views, the decree of that court must be reversed and the bill dismissed.

*Decree reversed.*